ST. PAUL'S PARISH OF PROTESTANT EPISCOPAL CHURCH AT EAST ST. LOUIS, Appellant, *vs.* THE CITY OF EAST ST. LOUIS *et al.* Appellees.

*Opinion filed June 29, 1910.*

1. CHURCHES—*the existence of local religious societies must be proved.* Courts will not take judicial notice of the existence or non-existence of local religious societies, but such facts, in order to be entitled to consideration, must be proven.

2. DEDICATION—*what does not show dedication of cemetery to Church of England.* The mere fact that certain lots in Illinois City, laid out on the commons of Cahokia in 1825, were designated on the plat as "English graveyard" does not authorize holding that such cemetery was dedicated to the Church of England and its successor in the United States, the Protestant Episcopal Church, there being no evidence to support such claim.

APPEAL from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

D. W. BURROUGHS, for appellant.

W. P. LAUNTZ, and KRAMER, KRAMER & CAMPBELL, for appellees.

Mr. Justice Cooke delivered the opinion of the court:

On June 8, 1908, the city council of the city of East St. Louis passed an ordinance vacating a cemetery located upon lots 489 to 492, inclusive, in block 63, in Illinois City, (now a part of the city of East St. Louis,) requiring all persons interested in the remains interred therein to remove the same within 120 days from the passage of the ordinance, and authorizing the mayor of the city, after the expiration of that time, to take charge of the property in the name of the city, remove all gravestones and other means of identification therefrom, level and sod the lots, and thereafter keep the same in a neat condition. Upon learning of the passage of this ordinance, Francis S. Taylor, rector of St. Paul's Parish of the Protestant Episcopal Church of East St. Louis, Illinois, acting on behalf of the parish, caused to be erected on lot 490 of said block 63 a small frame chapel building, sixteen feet long, twelve feet wide and fourteen feet high. Cedar blocks were used for the foundation. The building had no ceiling and was neither plastered nor painted. On or about December 22, 1908, the rector, having been notified by the contractor that the building was ready for use, attempted to enter the building to prepare for services, but was met by a policeman, who notified him that he would not be permitted to enter the building and refused to allow him to open the door. The rector on the same day received a written notice from the city attorney of East St. Louis notifying him that the city was the owner of lot 489, upon which, the notice stated, the building had been erected, and that the building must be removed, and that in default of the immediate removal thereof the city authorities would remove the same. Thereupon St. Paul's Parish of the Protestant Episcopal Church of East St. Louis, Illinois, on the following day filed its bill in the circuit court of St. Clair county, to the January term, 1909, alleging that it was the owner of the lots in question, and praying for an injunction re-

straining the city of East St. Louis, the mayor, the chief of police and the police officers of the city, and all other agents, servants, employees, persons, firms or corporations acting by, through or under the city, from in any manner interfering with the complainant, its rector and members in the use of said building and lots, and from in any manner tearing down, removing, destroying, defacing or in anywise molesting said building, or doing any other act or thing towards interfering with the proper use and enjoyment of said building and premises by the complainant and members of its congregation. Upon application to the master in chancery a temporary injunction was granted in accordance with the prayer of the bill. The defendants answered the bill, denying that the complainant is the owner of said lots or is entitled to the relief sought by the bill, and praying that the injunction theretofore issued be dissolved. After a hearing before the court a decree was entered dissolving the temporary injunction and dismissing the bill for want of equity. The complainant thereupon appealed to the Appellate Court for the Fourth District, which court has transferred the cause to this court.

It appears from the evidence introduced upon the hearing in the circuit court that the lots in question were dedicated as a burial ground in 1825 by commissioners duly appointed by the inhabitants of the village of Cahokia, in the State of Illinois, to lay out a town on the commons of said village. Those commissioners, on July 2, 1825, made and acknowledged before a justice of the peace of St. Clair county a plat of Illinois City, which was recorded on July 27, 1825, in the office of the recorder of deeds of said county. Upon this plat Illinois City was divided into lots and blocks. The words "English Graveyard" were written upon the plat across lots 489 to 492, inclusive. Those lots were thereafter used as a burial ground, which became generally known and spoken of in that locality as "the city graveyard," "the Illinois City graveyard," "the

Illinois City cemetery" and "the Protestant graveyard." No one seems to have had or assumed any authority or control over those lots until about 1865, when certain persons, designating themselves as trustees of the English graveyard, subdivided a portion of the four lots into 128 sub-lots and caused a plat thereof to be made and recorded in St. Clair county. Thereafter trustees were elected, at meetings of residents of Illinois City called for that purpose, to look after the graveyard and to sell lots for burial purposes. They sold several of the sub-lots, built a fence around the graveyard and continued to exercise control over the lots in question until about 1877, when Illinois City was annexed to the city of East St. Louis, since which time the city, together with the undertakers of East St. Louis and relatives of deceased persons buried therein, has exercised such control and care as have been bestowed on the lots and graves thereon. For several years last past there has been no available space for new graves on those lots.

Appellant proved that the Protestant Episcopal Church of the United States of America, of which appellant is a constitutent parish, is successor of the Church of England.

The contention of appellant is, that by reason of the dedication of these lots as "English Graveyard" the title thereto became vested in it, and that the city has no right to exercise any control whatever over the premises. On the other hand, the appellees contend that this is a public graveyard and is not under the control of any corporation sole, organization or society, and that by virtue of an act in relation to the control of public graveyards, passed by the General Assembly of Illinois, in force July 1, 1879, this cemetery is under the control of the city.

The first question to be determined is whether appellant holds title to these lots or is entitled to possession. The facts contained in the record which bear upon this question are very meager. Appellant's argument in support of its contention that it is the owner of these lots is

based solely upon the fact that it is the successor in the United States of the Church of England, sometimes referred to as the English Church, and the further fact that these lots were designated on the plat of Illinois City as "English Graveyard." No attempt was made to show that there was any member of the Protestant Episcopal Church of the United States of America in or near that community at the time this dedication was made. The record does disclose that the town designated by the plat as "Illinois City" was laid out on the commons of the village of Cahokia in 1825. It appears further that the Church of England was founded in this country at Jamestown, Virginia, in 1608; that at the time of the Revolutionary war the church in America was separated from the church in England, and thenceforth was known as the Protestant Episcopal Church of the United States of America. The rector of the appellant parish, who testified as to the history of the church, gave the date of this separation as the year 1778. So far as the facts are disclosed by this record, neither appellant nor any other parish of the Protestant Episcopal Church, or any member or members thereof, from the time this dedication was made, in 1825, down until the latter part of the year 1908, ever exercised or attempted to exercise any control over these lots or claimed any right or title in them. Appellant bases its whole claim of title to these lots upon the fact that they were designated on the plat as "English Graveyard."

Both appellant and appellees have argued at some length numerous facts which they seem to assume appear by this record. While it is apparent that the original plat of Illinois City, as made and filed in 1825, was offered in evidence, no part of it appears in this record except block 63, of which the lots in controversy are a part. Reference is made in the arguments to certain lots which were designated on the plat as "Catholic Graveyard," a lot designated as "Catholic Church" and another lot designated as "Eng-

lish Church." While both parties seem to concede that this plat contained the lots so designated, the facts do not appear of record in this case.

Appellees also make the statement, which is not contradicted by appellant but which is unsupported by the record, that the Protestant Episcopal Church first established a mission in that community about thirty-five years ago, which mission flourished for a short time and then ceased to exist, and that appellant's present organization, which is the first parish of the Protestant Episcopal Church ever established in the community, was organized in January, 1885; that at the time Illinois City was platted there was a Methodist congregation there and also a Baptist congregation, consisting of English speaking people, but there was not, and never had been, a society of the Protestant Episcopal Church there, and the appellees assume that this court will take judicial notice of this situation. Such facts, to be entitled to consideration, should have been proven. This court will not take judicial notice of the existence or non-existence of local religious societies. We must determine what rights, if any, the appellant has in the premises from the facts appearing in the record and from such facts as this court can take judicial notice of. We cannot assume, in the absence of any proof, that there was a parish of the Protestant Episcopal Church, or any members of that church, in this community in 1825, at the time this dedication was made. Nor do we think we would be warranted in assuming that even if there had been such a parish or members of that church there at that time, a dedication under the name of "English Graveyard" would necessarily be a dedication to the parish or such members.

It appears from this record, however,—and we take it that it is a matter of common knowledge,—that the Protestant Episcopal Church in this country is sometimes referred to as the "English Church" and frequently as the "Anglican Church," and, so far as the language used in designat-

ing these lots on the plat is concerned, when considered without reference to any other fact, this dedication might have been to that organization. But the grant of the commons upon which Illinois City was laid out was made by the French government to the persons who first settled Cahokia. These people were of French nationality and by religion were Catholics. They were, in the main, French speaking people. It is argued by appellees,—and we think with considerable force,—that the dedication of the "English Graveyard" was made for the benefit of the English speaking people who then resided in that community or who might thereafter reside in Illinois City. This argument is strengthened by the fact, which is conceded, that by the same plat a tract of ground was dedicated as a Catholic graveyard. This, together with the fact that the cemetery in controversy was commonly known as the city graveyard or Protestant graveyard, and the further fact that for a period of eighty-three years after the dedication was made neither the Protestant Episcopal Church nor any of its constituent parishes asserted any claim of ownership or right whatever in the cemetery, but permitted it to be controlled, first by trustees selected by the citizens, generally, of Illinois City, and later, for at least thirty years next preceding the filing of this bill, by the city of East St. Louis, clearly indicates that this dedication was never regarded by those interested as having been made to the Protestant Episcopal Church or any parish thereof. From all the facts we are led to the conclusion that it was not so made, but was made for the use of the English speaking Protestants of that community as distinguished from the French Catholics, and is a public graveyard, within the meaning of the statute.

The record does not disclose any right in appellant to maintain this bill, and the decree of the circuit court is affirmed.

*Decree affirmed.*